UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

ALONZO J. STENOSKI,

                    Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

07-CV-552
(FJS/VEB)

## I. INTRODUCTION

In January of 2004, Plaintiff Alonzo Stenoski filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since August 1, 2001, primarily due to obstructive sleep apnea, depressive disorder, anxiety disorder, diabetes, asthma, arthritis, and morbid obesity. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Conboy, McKay, Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action on May 23, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff applied for SSI benefits on January 20, 2004, alleging that she had been unable to work since August 1, 2001. (T[1] at 72).  The application was denied on March 22, 2004.  (T at 33).  Plaintiff filed an untimely request for a hearing, however, because she showed good cause for the untimely request, a  hearing before an Administrative Law Judge ("ALJ") was granted and held on October 26, 2005.  (T at 419).  ALJ Lawrence E. Shearer conducted the hearing from Roanoke, Virginia. (T at 421).  Plaintiff and her attorney appeared via videoconference from Watertown, New York.  (T at 18, 420-21).

On December 12, 2005, ALJ Shearer issued a written decision denying Plaintiff's application for benefits.  (T at 18-30).  The ALJ's decision became the Commissioner's decision on May 14, 2007, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 6).

Plaintiff commenced this action on May 23, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on September 17, 2007. (Docket No.8).   The Commissioner filed a Brief in opposition on January 4, 2008. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6)

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

3

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See *Bowen*, 482 U.S. at 146 n. 5; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date of August 1, 2001.  (T at 24).  The ALJ found that Plaintiff has the following "severe" impairments: sleep apnea with daytime fatigue, obesity, depressive disorder and anxiety disorder.  (T at 25).  However, the ALJ concluded that Plaintiff's impairments did not meet or equal the level of severity of any disabling condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations"). (T at 25).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to perform light and sedentary work. (T at 26). Specifically, the ALJ found that Plaintiff retains the residual functional capacity to "lift, carry, push and/or pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk about four hours total in an 8-hour workday, and sit as needed approximately six hours in an 8-hour workday." (T at 28).  The ALJ further found that Plaintiff can "climb stairs and ramps, but not ladders, scaffolds or ropes.  She can occasionally kneel, crouch, stoop, bend, squat, and stoop."  (T at 28).  The ALJ stated that Plaintiff can use her hands, but because of psychological impairments, is limited to simple tasks. (T at 28).

The ALJ concluded that Plaintiff could return to her past relevant work as a binder operator and substitute bus aide.  (T at 28).  The ALJ found that given Plaintiff's residual functional capacity, age, work experience and education, there are a significant number of other jobs that also exist in the national economy that she can perform.  (T at 28).

6

Therefore, the ALJ determined that Plaintiff is not under a disability.  (T at 28).

As noted above, the ALJ's decision became the Commissioner's final decision on May 14, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers five (5) principal arguments in support of her position.  First, she argues that the ALJ failed to properly assess the severity of her diabetes mellitus, chronic obstructive pulmonary disorder, and arthritis.  Second, Plaintiff contends that the ALJ did not follow the required steps when considering the extent and impact of her depression and anxiety.  Third, Plaintiff asserts that the ALJ failed to properly assess her residual functional capacity.  Fourth, Plaintiff argues that the ALJ erred by concluding that she can perform her past relevant work.  Fifth and finally, Plaintiff contends that there is no substantial evidence to support the ALJ's conclusion that there is significant work in the national economy that Plaintiff could perform.  This Court will address each argument in turn.

### a.    Severity Assessment

Step two of the five-step sequential evaluation process requires a determination as to whether the claimant has a severe impairment that significantly limits the physical or mental ability to do basic work activities.[3]  An impairment is "severe" if it causes more than

---

[3]The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. § 404.1521(b). For example: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(b).

minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c). The severity analysis does no more than "screen out *de minimis* claims."  If the disability claim rises above the *de minimis* level, then further analysis is warranted. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995).

Plaintiff asserts that the ALJ erred by failing to assess her diabetes mellitus, chronic obstructive pulmonary disorder, and arthritis as "severe" impairments.

### i.    Diabetes Mellitus

Plaintiff points to medical evidence indicating that she suffers from diabetes mellitus (T at 161, 179) with associated numbness and neuropathy (T at 319, 333-34).  Nerve conduction studies showed "[c]ompressive neuropathy of the peroncal nerves bilaterally between the ankle and fibular head," (T at 137) and "[m]ild to moderate compression of the motor nerves," (T at 295), which Plaintiff contends are related to her diabetes.  The record also indicates that Plaintiff complained of dizziness, vertigo, blurred vision, and eye floaters, which she also attributes to diabetes.  (T at 171, 383, 447).

The ALJ reviewed the record and concluded that Plaintiff's diabetes mellitus was a "non-severe" impairment that "[did] not impose more than minimal restrictions on [Plaintiff's] ability to perform work-related activities." (T at 25).  The Court finds that the ALJ's decision in this regard was supported by substantial evidence.

As the ALJ noted, the record indicates that Plaintiff's diabetes was well controlled when she complied with her treating physician's recommended treatment.  When Plaintiff took her medications and watched her diet, as recommended by Dr. Shirley Tuttle-Malone (her treating physician), Plaintiff's blood sugar was noted to be "normal" and she was found

to be in "overall good control of her diabetes" without the use of insulin (T at 385).  Dr. Tuttle-Malone indicated that Plaintiff admitted to lacking willpower (T at 175) and was "poorly motivated in terms of diet and exercise," which the physician had recommended as part of her treatment.  (T at 396).  The doctor also indicated that Plaintiff's neuropathy was caused by non-compliance with the treatment program. (T at 396).  According to Dr. Tuttle-Malone, Plaintiff's complaints of dizziness were only "occasional" and likely caused by drops in blood sugar related to her poorly controlled diabetes. (T at 383).  Dr. Tuttle-Malone opined that Plaintiff's vertigo was not disabling and also only occasional. (T at 383).

Pursuant to 20 C.F.R. § 416.930, which the ALJ referenced in his decision, non-compliance with prescribed medical treatment can be a basis for denial of benefits.  See *Feliciano v. Barnhart*, No. 01 CV 5099, 2002 WL 32096586, at *3 (E.D.N.Y. July 1, 2002)("The SSA Regulations provide that a claimant who fails to follow prescribed medical treatment which would restore her ability to work is typically ineligible for SSI benefits.") (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) ("a remediable impairment is not disabling")).

Further, notwithstanding Plaintiff's claims of visual blurring and eye floaters, her visual examinations were generally unremarkable (T at 373, 375) and there is no indication that the alleged vision problems were either severe or, for that matter, causally related to diabetes. (T at 24).

The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N .Y.1995). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality'

which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).  In this case, the ALJ concluded that Plaintiff's diabetes was not severe because the condition was well controlled when Plaintiff complied with the prescribed treatment and was not disabling when controlled.  For the reasons set forth above, the Court finds that the ALJ's decision in this regard was in accord with applicable law and supported by substantial evidence.

### ii.   Chronic Obstructive Pulmonary Disorder

Plaintiff argues that her chronic obstructive pulmonary disorder ("COPD") should likewise have been considered a "severe" impairment.  She points to medical records showing symptoms such as chest tightness and intermittent pain across her chest. (T at 138, 157).  In addition, Plaintiff complained of shortness of breath upon very little exertion. (T at 138, 151, 155, 157).  Plaintiff characterizes several treatments (including a nebulizer, steroid therapy, medications, and inhalers) as unsuccessful.

The ALJ reviewed the record and concluded that Plaintiff's COPD was a "non-severe" impairment that "[did] not impose more than minimal restrictions on [Plaintiff's] ability to perform work-related activities." (T at 25).  The Court finds that the ALJ's decision in this regard was supported by substantial evidence.

Plaintiff's breathing was reported as "excellent" by Dr. Tuttle-Malone in June 2005, with the notation that Plaintiff had "no problems" related to asthma. (T at 393).  Plaintiff's symptoms were described as "mild" and "intermittent" and her asthma was generally considered "stable." (T at 394, 175).  In June of 2003, Dr. Tuttle-Malone noted that Plaintiff was suffering from "acute bronchitis" and "sinusitis," but opined that it was related to her

"[n]oncompliance with asthma care." (T at 157).   Clinical  pulmonary function tests were unremarkable (T at 257-260) and a chest x-ray showed no evidence of active lung disease. (T at 261).   Dr. Sushma Kaul examined Plaintiff in September of 2003 and characterized Plaintiff's lung issues as "mild." (T at 140).

In sum, as with her diabetes, the ALJ concluded that Plaintiff's COPD was not severe because the condition was well controlled when Plaintiff complied with the prescribed treatment and was not disabling when controlled.   For the reasons set forth above, the Court finds that the ALJ's decision in this regard was in accord with applicable law and supported by substantial evidence.

### iii.    Arthritis

Plaintiff contends that her arthritis should have been considered a "severe" impairment.   She frequently complained of back pain, with associated "snapping," "crackling," and "popping" from her joints rubbing on one another when she moves.  (T at 179, 253).   Plaintiff describes her lower back pain as constant and worsened with prolonged sitting or standing.  (T at 175, 319, 372).   She wears a brace on her right ankle (T at 317), walks with a limp and slow gait (T at 264, 387), and complains of chronic knee pain, along with problems related to her neck and hands.  (T at 165, 253).

The ALJ reviewed the record and concluded that Plaintiff's arthritis was a "non-severe" impairment that "[did] not impose more than minimal restrictions on [Plaintiff's] ability to perform work-related activities." (T at 25).  The Court finds that the ALJ's decision in this regard was supported by substantial evidence.

Dr. Tuttle-Malone indicated that Plaintiff suffered from back pain "occasionally" (T at 319, 396).  Plaintiff treated her pain with Tylenol and while the "popping" sounds may

11

have bothered Plaintiff, Dr. Tuttle-Moore was unconcerned. (T at 179).  X-rays of her knees and right ankle were generally unremarkable. (T at 228, 356).

In light of the foregoing, the Court finds that the ALJ's conclusion that Plaintiff's arthritis was not "severe" within the meaning of the Act was in accord with applicable law and supported by substantial evidence.

### b.    Consideration of Extent and Impact of Depression and Anxiety

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, Plaintiff contends that the ALJ did not adhere to the special technique requirements.  Specifically, Plaintiff described her symptoms as follows: chronic fatigue and

sadness, with diminished energy and motivation; chronic irritability; fluctuating moods with tearfulness; feelings of hopelessness with occasional thoughts of suicide; distress and anxiety with increased heart rate; hyperalertness and psychomotor agitation; constricted affect; and diminished memory and concentration.  Plaintiff provided supporting citations to the medical record, which document her complaints regarding these symptoms. (Plaintiff's Brief, Docket No. 8, at p. 11).

Plaintiff argues that the ALJ's analysis of the limitations that these conditions impose upon her activities of daily living was insufficiently detailed.  Further, she points to portions of the Mental Residual Functional Capacity Assessment completed by Dr. Carlos Gieseken, a non-examining State Agency Physician.  Dr. Gieseken opined that Plaintiff is moderately limited with respect to her ability to: understand and remember detailed instructions; carry out detailed instructions; perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (T at 273-74).

The ALJ noted that Plaintiff suffered from, *inter alia*, depressive disorder and anxiety disorder and concluded that those impairments were "severe" within the meaning of the Regulations. (T at 25).  The ALJ found that Plaintiff's mental impairments satisfied the diagnostic listing criteria for depressive disorder and anxiety, which are set forth in

paragraph "A" of §§ 12.04 and 12.06 of the Listings.[4] (T at 25).   However, the ALJ determined that the record did not establish that Plaintiff's mental impairments satisfied the remaining requirements of those portions of the Listings.  (T at 25).  Although the ALJ's analysis regarding these issues is not as clear and organized as one would prefer, this Court finds that the ultimate conclusion is consistent with applicable law and supported by substantial evidence.

To have an impairment that meets or medically equals one of the Listings (in this case the applicable Listings are §12.04 and §12.06), the claimant must satisfy *both* Paragraphs A *and* B or Paragraph C of §12.04 or, in the case of §12.06, satisfy Paragraphs A *and* B or *both* paragraphs A and C.  In this case, there is no evidence or argument that Plaintiff meets the Paragraph C criteria for either Listing.  The Paragraph B criteria are the same under §12.04 and §12.06.  Thus, even though the ALJ determined that Plaintiff satisfied the diagnostic listing criteria for Paragraph A, the ALJ determined that Plaintiff did not satisfy Paragraph B.  (T at 25).  The question for this Court is whether that conclusion is supported by substantial evidence.

The Paragraph B analysis "requires the ALJ to rate the degree of the claimant's functional limitation in four specific areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Manning v. Astrue*,

---

[4]"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, *i.e.* meets one of "the Listings," the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).  The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See *Naegele v. Barnhart*, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

No. 07-CV-0327, 2009 WL 604900, at *3 (W.D.N.Y. Mar. 9, 2009).  "Simply stated, in order to satisfy the Paragraph B criteria, the claimant must demonstrate at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id.* (citing *Paratore v. Comm'r of Social Sec. Admin.,* 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. February 25, 2008)).

With regard to activities of daily living, Plaintiff cared for family members, including grandchildren, and drove a car occasionally.  (T at 26-27, 114, 116, 262, 428).  She assisted with household chores such as cooking, cleaning, and laundry and was able to pay bills and manage funds. (T at 115, 117, 265).  Dr. Gieseken opined that Plaintiff has "mild" limitation with respect to activities of daily living. (T at 287).

"Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." *Bergman v. Sullivan*, CIV 88-513L, 1989 WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989).  Plaintiff's family relationships were described as "fair to good," but she was noted to lack friends, hobbies, or interests.  (T at 265).  Dr. Gieseken indicated that Plaintiff had "moderate" limitation with respect to social functioning. (T at 287).  In particular, Dr. Gieseken opined that Plaintiff was moderately limited with regard to her ability to interact appropriately with the general public and accept instructions/respond appropriately to criticism from supervisors. (T at 274).  Dr. Kristen Barry, who performed a consultative psychological examination, described Plaintiff's "overall manner of relating and social skills" as "adequate." (T at 264).

With respect to Plaintiff's ability to maintain concentration, persistence, or pace, Dr.

Kristen Barry noted that Plaintiff's attention and concentration were "intact" and she was "able to recall 6-digit number forward and a 5-digit number backward." (T at 264). Plaintiff had the ability to "do counting, simple calculations, and serial 7s." (T at 264). Dr. Gieseken indicated that Plaintiff had only "mild" limitations with regard to maintaining concentration, persistence, or pace. (T at 287). Dr. Gieseken further opined that Plaintiff had no significant limitations with regard to carrying out very short and simple instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without supervision; working in coordination with or proximity to others without being distracted by them; and making simple work-related decisions. (T at 273).

There is no indication that Plaintiff had any repeated episodes of decompensation of an extended duration. The ALJ noted that the record "contained no treating physician opinion concerning the limitations or restrictions from any mental . . . condition." (T at 27). Although Plaintiff points to medical evidence documenting symptoms that she contends impose "moderate limitations," there is no evidence that she suffers from "marked" limitations in at least two of the categories set forth under Paragraph "B."

Accordingly, the Court finds that the ALJ applied the appropriate legal standard in assessing the extent and impact of Plaintiff's mental impairments. Further, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not render her disabled within the meaning of the Act.

### c.    Assessment of Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an

ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

The ALJ determined that Plaintiff retained the RFC to lift, carry, push or pull up to 20 pounds occasionally and 10 pounds frequently; stand/walk for about 4 hours in an 8-hour work day, and sit as needed approximately 6 hours in an 8-hour work day. (T at 28). The ALJ further found that Plaintiff can climb stairs and ramps, but not ladders scaffolds or ropes; and can occasionally kneel, crouch, bend, squat, and stoop. (T at 28).  However, "[d]ue to her psychological impairments," the ALJ concluded that Plaintiff was "limited to simple tasks." (T at 28).

The ALJ further determined that, based upon Plaintiff's RFC, she could return to her past relevant work as a binder operator and substitute bus aide. (T at 28).  In addition, the ALJ noted that even if Plaintiff could not return to that past relevant work, she could perform light, unskilled work as a stock order clerk or security guard. (T at 29).

Plaintiff contends that the ALJ erred in determining her RFC.  Specifically, Plaintiff points to the assessment of Dr. Tuttle-Malone, her treating physician, who opined that Plaintiff "certainly may not be able to stand for eight hours or do alot [sic] of lifting, stooping or bending . . . ." (T at 175).  Plaintiff further suggests that the ALJ did not account for her mental limitations, as noted by Dr. Gieseken and outlined above. (T at 273-74).

17

The Court has no difficulty in finding that the ALJ's decision as to Plaintiff's RFC was supported by substantial evidence.  Plaintiff points to the assessment of her treating physician, but fails to note that in the exact same report, Dr. Tuttle-Malone stated that she "doubt[ed]" that Plaintiff was "fully disabled" and opined that Plaintiff "could probably do at least sedentary work." (T at 175).

Dr. Gieseken did note some "moderate" limitations in certain areas related to Plaintiff's mental impairments, but the ALJ factored those limitations into his RFC determination when he concluded that Plaintiff was limited to simple tasks.  Dr. Gieseken concluded that Plaintiff was not significantly limited with regard to her ability to understand, remember, and carry out very simple and short instructions; make simple work-related decisions; and ask simple questions or request assistance. (T at 273-74).

Dr. Barry, the physiological consultative examiner, also noted that Plaintiff was "able to follow and understand simple directions and instructions" and "appear[ed] to be a fairly intelligent individual." (T at 265).

The ALJ noted that the record did not contain any "treating physician opinion concerning the limitations or restrictions from any mental or physical condition." (T at 27).  The only evidence offered by Plaintiff to the contrary is Dr. Tuttle-Malone's assessment.  As discussed above, when the statement is placed in context, it is clear that Plaintiff's treating physician did not consider her fully disabled and, in fact, believed she could perform "at least" sedentary work.

Further support for the ALJ's RFC determination is found in the assessment of the State Agency Review physician, who indicated that Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations. (T at 267-71).   It is well settled that an

ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In light of the above, the Court finds that the ALJ's determination with regard to Plaintiff's RFC was in accord with applicable law and supported by substantial evidence.

### d.    Ability to Perform Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2)

19

medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." *Speruggia v. Astrue*, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

The ALJ concluded that Plaintiff retained the RFC to perform her past relevant work as a binder operator and substitute bus aide. (T at 28).  Plaintiff argues that consideration of her past work as a substitute bus aide[5] by the ALJ was an error because her earnings from that work did not rise to the level of "substantial gainful activity" within the meaning of the Act.[6]  Defendant concedes this point. (Docket No. 13, at p. 16).

However, the ALJ also alternatively determined that Plaintiff could perform her past relevant work as a binder operator.  This assessment was based upon Plaintiff's testimony concerning her job responsibilities (T at 430) and testimony from a vocational expert with respect to the skill and exertion level required to perform the job of binder operator. (T at 450).  Specifically, the vocational expert noted that the job of binder operator was considered "light," "unskilled" work. (T at 450).  The ALJ presented the vocational expert with a hypothetical claimant having with the same age, education, experience, and RFC as Plaintiff (as determined by the ALJ) and inquired whether that claimant could perform the job of binder operator. (T at 451-52).  The vocational expert indicated that the hypothetical

---

[5]Plaintiff refers to past work as a substitute bus "driver," but it appears that the reference is to her work as a bus "aide."

[6]Past work is only relevant if it constituted "substantial gainful activity."  To determine whether past work was "substantial gainful activity," the ALJ considers the claimant's earnings in accordance with a specified formula.  See 20 C.F.R. §§ 404.1574, 416.974; *Rivera v. Barnhart* 379 F.Supp.2d 599, 605 (S.D.N.Y. 2005).

claimant could perform that job. (T at 451).

Plaintiff argues that the hypothetical presented to the vocational expert was flawed because it ignored or understated the impact of Plaintiff's physical and mental limitations on her RFC.

Whether a hypothetical presented to a vocational expert is appropriate depends on whether the hypothetical fully encompasses the claimant's physical and mental limitations. *Magee v. Astrue*, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." *Id.*

Here, the ALJ's hypothetical contained all of the limitations that he reasonably found to be present.  For the reasons stated above, the ALJ's assessment as to Plaintiff's limitations was supported by substantial evidence.  Thus, the Court finds no flaw with the hypothetical and the ALJ was entitled to rely upon the vocational expert's response in support of his determination that Plaintiff could perform her past relevant work as a binder operator.

> **e.     Existence of Significant Work in the National Economy that Plaintiff can Perform**

Plaintiff argues that the ALJ erred in determining that there is significant work in the national economy that she can perform.  The ALJ's finding in this regard was based, once again, upon the testimony of the vocational expert and the expert's responses to hypotheticals involving a claimant with the same age, education, experience, and RFC as

the Plaintiff (as determined by the ALJ).  Plaintiff's argument as to this issue restates the objection outlined above, namely, that the ALJ erred in assessing her RFC and thus presented an incomplete hypothetical to the vocational expert.  As noted above, the ALJ's determination of Plaintiff's RFC was supported by substantial evidence and the ALJ could therefore properly rely upon the vocational expert's responses in support of his finding that there was significant work in the national economy that Plaintiff can perform.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering a decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 23, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

23

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July  23, 2009

Victor E. Bianchini
United States Magistrate Judge